KENNETH M. SORENSON
United States Attorney
District of Hawaii

WAYNE A. MYERS
JONATHAN D. SLACK
Assistant U.S. Attorneys
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Email: Wayne.Myers@usdoj.gov
       Jonathan.Slack@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>         vs.<br><br>RUMALDO VALDEZ,<br><br>                    Defendant. | Case No. CR25-112 JAO<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br><u>SENTENCING</u><br>DATE:   March 2, 2026<br>TIME:   9:30 a.m.<br>JUDGE:  Hon. Jill A. Otake |

**<u>UNITED STATES' SENTENCING MEMORANDUM</u>**

I.      INTRODUCTION

The United States of America, by and through the United States Attorney for the District of Hawaii, hereby files this Memorandum regarding the sentencing of defendant Rumaldo Valdez. Assuming the applicable guideline range is 97–121 months of imprisonment, a custody term in the upper half of the guideline range, that is, at least 110 months of imprisonment, is necessary to reflect the seriousness of the offense and to protect the public from this defendant. The Court should impose such a sentence and, when doing so, clearly define the scope of its sentencing analysis. Regarding scope, the government asks that the Court focus on the defendant's child-pornography possession, while considering his child exploitation as relevant context.

II.     DISCUSSION

A.     **At Least 110 Months of Imprisonment—Necessary to Reflect the Seriousness of the Offense and to Protect the Public from the Defendant**

"I get bored. Normal porn won't do it for me anymore." I "watch [child pornography]" "all the time," said the defendant in 2020, under his Discord moniker, "Duck." *See* PSR ¶ 18. Fast forward four years and a military enlistment later: The defendant was still clinging to his "Duck" days, refusing to move past the heinous acts that stained his teenage years. He was still browsing Discord chats under an email associated with "Duck." *See id.* ¶ 14. He hunted for clues that law enforcement might be closing in on him. *See id.* And he accessed

2

mementos of his most dangerous predilection—online exploitation of minors—images of a "human foot with the word 'Duck' written on the toes" and of a "small child bound and gagged with tape," *id*.  He did all of this on a United States military computer, equipment critical to national defense.  *See id*.[1]

Even more troubling, as an active military member, the defendant stashed into his personal computer not one, but two, password-encrypted digital containers holding some of the most extreme child-abuse images in existence:  Infant rape; a young girl irrumated; a baby's throat slashed, seemingly executed; a toddler tortured, kicked in the head, urinated on, burned, while screaming in pain; a pre-teen encircled by masturbating men, her face covered in semen; a young boy holding a "Duck" fan sign with his genitals exposed.  PSR ¶¶ 17–22.

The defendant now objects because he purportedly didn't "access" those child-abuse files while in Hawaii.  *See* ECF No. 27, p. 3 (Defendant's Sentencing Statement).  Even assuming he didn't—a misplaced assumption, as explained below—the metadata he invokes in support of his argument would, under his same logic, establish that he created the password-encrypted containers *after* he moved to

---

[1] *See also* PSR ¶ 13 (describing the defendant's position at the "Naval Computer and Telecom Area Master Station Pacific (NCTAMS PAC) in Wahiawa, Hawaii"); Commander, Naval Infor. Forces, NCTAMS PAC, https://www.navifor.usff.navy.mil/nctamspac/  (last visited Feb. 14, 2026) ("[NCTAMS] provides . . . warfighting support to naval, joint, agency, and coalition forces . . . . Our mission is critical to Navy information warfare and the great power competitions in this region.").

Hawaii, undercutting any argument that he abandoned his wicked ways once setting foot on the islands.  Specifically, the metadata would, under the defendant's logic, establish that he created the encrypted containers in October 2023 and later tinkered with files on the containers in January 2024.  *See* ECF No. 29, pp. 9–11 (United States' Sentencing Statement); PSR ¶ 22.  Those dates are after the defendant relocated to Hawaii in August 2023.

Notably, those dates are also after the defendant's confederate was apprehended in 2021, *see id.* ¶ 10, and not long after the press coverage of that confederate's prosecution first hit the interwebs in 2023.[2]  This is the same confederate with whom the defendant joked about extorting a pre-teen into sending "lewds," PSR ¶ 15, and who described the defendant as "just suppl[ying] me [with child pornography] like instantly," *id.* ¶ 18.  Certainly, the confederate's disappearance from Discord and his subsequent prosecution are reasons for the

---

[2] *Compare* U.S. Attorney's Office, District of New Mexico, Albuquerque man pleads guilty to cyberstalking, child pornography offenses (Jan. 3, 2023) (mentioning "extorting," "CSAM," and "Discord")*, and* Scott Brown, KRQE News, Albuquerque man used Snapchat to share child pornography (Jan. 4, 2025), *with* Google.com search results for "Zachary Dosch" confined from January 1, 2019 to December 31, 2022, https://www.google.com/search?q=%22zachary+dosch%22&tbs=cdr:1,cd_min:1/1/2019,cd_max:12/31/2022& (returning no pertinent press coverage).

4

defendant to have used the encryption tool[3] that he did and to have squirrelled away his illicit stash when he did.  Again, these arguments assume the metadata is indisputably accurate.  Even so, the defendant is hardly better off—he encrypted and concealed his child pornography instead of deleting it.

      The assumption of accurate metadata is misplaced, however, for the reasons detailed in the government's prior briefings.[4]  The Court need not fall into technical weeds now:  The upshot is that "Date accessed" metadata is *not* a very reliable measure of when someone "opens" or "views" a file, and the Court should not assume so in this case.  Beyond the fact that metadata can be altered,[5] Windows handles "Date accessed" metadata in a way that can create both "Type 1" and "Type 2" assumption errors in this case, i.e., that the defendant truly viewed child-pornography longer ago, or more recently than, the metadata suggests.  Not to mention that "Date accessed" metadata would *not* have captured the defendant's consuming child pornography in the form of image-preview icons.  In that way, he

---

[3] *See* VeraCrypt, Frequently Asked Questions (last updated July 2nd, 2017) ("We have not implemented any 'backdoor' in VeraCrypt (and will never implement any even if asked to do so by a government agency)[.]") (emphasizing example of FBI failing to decrypt an encrypted container), https://veracrypt.jp/en/FAQ.html.

[4] ECF No. 29, pp. 9–11 (citing ECF Nos. 29-1, 29-2, 29-4); ECF No. 30, pp. 8–9; *see also* PSR p. 35.

[5] *See, e.g.*, ECF No. 29-2, ¶ 8 (Declaration of FBI Special Agent Scott Wells) (explaining how VeraCrypt can control metadata using the "[p]reserve modification timestamp of file containers" setting).

could have viewed child-pornography images numerous times without clicking on them (opening them) and thus without modifying any "Date accessed" metadata.[6]

And so, the Court should look beyond the confusing metadata and focus instead on the straightforward fact that the defendant possessed extremely serious child pornography in the District of Hawaii.  He recorded some of it.[7]  He kept it on three hard drives.  He hid it using an encryption tool that advertises "plausible deniability."[8]  These actions demonstrate significant consciousness of guilt regardless of any access date, plain and simple.

What's also plain and simple is that the defendant is a serious threat to public safety.  He was when he joined the military, and he continued to be so[9] after he

---

[6] The Court can emulate this phenomenon by applying the "Extra large icons" view setting to a media folder in Windows Explorer.

[7] *See, e.g.*, PSR ¶ 19 (describing a "screen recording of 'Duck' participating in the 'e-rape' channel"); *see also id.* ¶ 22 (describing instructional video on accessing the encrypted container, showing the computer operator accessing a .txt file.).

[8] *See* VeraCrypt, Plausible Deniability, https://veracrypt.jp/en/Plausible%20Deniability.html ("[A] VeraCrypt partition/device appears to consist of nothing more than random data . . . .  A possible plausible explanation for the existence of a partition/device containing solely random data is that you have wiped (securely erased) the content [(instead of the random data being hidden, encrypted files)].").

[9] As discussed above, in March 2024, investigators found a picture of a human foot inscribed (cut) with the moniker "Duck," i.e., a "fan sign," on the defendant's Navy computer.  The search history on that computer contained queries for hacking, remote access tools, malware, and hard drive wiping.  *See* PSR ¶ 14.

moved to Hawaii.  Don't just take the government's word for it:

| | |
|---|---|
| "[O]h yeah, I do it [(watch child pornography)] all the time.  I get bored.  Normal porn won't do it for me anymore." | The defendant 2020 PSR ¶ 18 |
| I sent you child pornography. | The defendant 2019–2020 PSR ¶ 24 |
| "Duck just supplies me like instantly. Need cp, boom, instantly. I get a bunch of cp." | Confederate 2020 PSR ¶ 18 |
| Duck encouraged me to write "Duck" on my body with a marker and to send photographs to him, which I did.<br><br>He has the ability to create a massive number of "bots" to target people. | Former pseudo-romantic partner 2025 PSR ¶ 26 |
| Duck would hack into other people's computers so that the ITO server members could accomplish blackmail.<br><br>I saw Duck coerce a teenager into recording herself masturbating and blackmail her into recording a cutting video. | Confederate 2024<br><br><br><br>PSR ¶ 12 |
| The defendant hates "non-aryan" folks. | Discord contact 2020–2023 PSR ¶ 24 |

7

| | |
|---|---|
| The Naval command has "lost all confidence and trust in [the defendant]." | Naval Commander 2025 PSR ¶ 85 |
| The defendant is one of those people for whom self-harm behavior was not merely a phase or moment of life but rather became part of his identity. The defendant was a "rather dark person." He was openly racist against black people. | Former romantic partner 2025 PSR ¶ 25 |

Given the above, the United States respectfully submits that a sentence of at least 110 months imprisonment is necessary to reflect the seriousness of the offense and to protect the public from this defendant.

**B.  The Focal Point of the Sentencing Should Be the Defendant's Child-Pornography Possession in Hawaii, Not His Prior Activities Elsewhere.**

The elephant in the room is how the Court should account for the indictment pending against the defendant in the Eastern District of New York.  *See* ECF No. 29-3 (Indictment).  There, the defendant is facing a twenty-year mandatory minimum on a child-exploitation-enterprise charge.  *See id.* at pp. 5–15 (charging 18 U.S.C. § 2252A(g)).  The scope of the alleged enterprise spans 2020 to 2021, covering sexual extortions, distribution of child pornography, and accessing with

8

intent to view child pornography over the ITO server, among other predicate acts. *See id.* The defendant was on the mainland during that period. *See* PSR ¶ 13.

There are a few different ways this Court might slice and dice the defendant's conduct at sentencing. One possibility: The Court considers all the defendant's conduct—even his 2020–2021 extortions (relevant conduct)—to the fullest extent possible. The problem with that approach is that the Court does *not* have a complete picture of the child-exploitation enterprise. This is because this case was charged in a criminal complaint well before the enterprise investigation was completed. As a result, evidence pertaining to the child-exploitation enterprise is absent from the PSR. The government does not, therefore, recommend that the Court punish the defendant specifically for his exploitation conduct—conduct that is not fully described in the PSR and that is better lined up for the United States District Court for the Eastern District of New York.

Another possibility is that the Court considers only child-pornography possession without even acknowledging pre-Hawaii conduct. The problem with this approach is that the defendant's possession of much of his child-pornography is intertwined with his prior exploitations. Particularly, his exploitation activities are, first, evidence of his knowing possession of the encrypted child-pornography files, many of which are laced with appearances of "Duck"; second, evidence of why he would stash and continue to access child pornography, namely the Duck

"fan signs"[10]; and third, evidence of why he would store the child-pornography in encrypted containers, particularly because a confederate was being prosecuted elsewhere (i.e., Albuquerque).  While a simple possession case is attractive from an analytical standpoint, it is impractical here, where many of the child-pornography files are themselves evidence of the exploitation enterprise, *see, e.g.*, PSR ¶ 18.[11]

The last possibility, what one might call the Goldilocks approach, is for the Court to focus its sentencing on the defendant's child-pornography possession and to at least consider the defendant's pre-Hawaii exploitation conduct as pertinent context.  Under this approach, the "intertwined" rationales described above would bear weight in fashioning a sentence for child-pornography possession that is sufficient but not greater than necessary to comply with section 3553(a).  Under

---

[10] "Fan signs" are akin to trophies in online-exploitation groups.  Group participants coerce vulnerable persons—often minors—into creating child pornography or self-harm material on camera.  Sometimes, the self-harm material features a victim "cutting" into his/her body a particular participant's moniker, *see, e.g.*, PSR ¶ 14.  Participants then share the "fan sign" recordings because "fan signs" show their manipulative prowess and ability to subjugate others.  Participants retain "fan signs" for personal psychological and/or sexual satisfaction, treating them like mementos of pleasures past.

[11] Another downside to the approach where the Court completely ignores the exploitation conduct is that there is no guarantee of a conviction in the Eastern District of New York.  In the unlikely scenario of a dismissal, *no court* would have occasion to sentence the defendant on the exploitation conduct described in the PSR, much of which the defendant seems not to dispute here.

this approach, the exploitation conduct would *not* be the focal point of the sentencing—child-pornography possession would be.  The government recommends this approach.

Regardless of which approach the Court chooses, the government requests that the Court expressly state its approach on the record so that other courts can be aware of the scope of this sentencing.

### III.   CONCLUSION

For the reasons discussed above, the United States respectfully recommends that the Court impose on the defendant a sentence of at least 110 months of imprisonment, followed by 5 years of supervised release.

DATED: February 14, 2026, at Honolulu, Hawaii.

Respectfully submitted,

KENNETH M. SORENSON
United States Attorney
District of Hawaii

By: */s/ Jonathan D. Slack*
    JONATHAN D. SLACK
    Assistant U.S. Attorney

# **CERTIFICATE OF SERVICE**

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known address:

Served electronically through CM/ECF:

    Craig W. Jerome                craig_jerome@fd.org
    Attorney for Defendant
    RUMALDO VALDEZ

    Albert Banh                      albert_banh@hip.uscourts.gov
    United States Probation Officer

DATED: February 14, 2026, at Honolulu, Hawaii.

                                              */s/ Jonathan D. Slack*
                                              JONATHAN D. SLACK
                                              Assistant U.S. Attorney